SAVOY, Judge.
This suit arose out of an automobile accident in St. Landry Parish, Louisiana, on July 12, 1963. In the district court, liability was admitted and a stipulation was entered as to most of the special damages. After trial on the merits judgment was rendered granting Mrs. Drusilla G. Olivier $1,500.00 for her personal injuries; granting the minor, S. Camille Olivier, $6,500.00 for her personal injuries; and granting Mr. Sidney A. Olivier $1,389.75 for the medical expenses incurred by Mrs. Olivier, and $925.90 for the medical expenses incurred by his minor daughter, S. Camille. From this judgment defendant, Gulf Insurance Company, has appealed to this Court. Plaintiffs have answered the appeal.
Defendant maintains the district court erred in finding a causal relation between the accident and the medical problems of Camille Olivier, that the award for Camille should be reduced to $25.00 or $50.00, and the award for her medical expenses should be reduced to $5.00. Plaintiffs maintain the awards to Mrs. Olivier and for the benefit of Camille should be increased to $7,500.00 and $13,000.00, respectively; and, that the award for medical expenses relating to Mrs. Olivier’s injuries should be increased by $355.68.
The record shows that Camille Olivier was 12 years of age at the time of the accident. The accident caused her to be thrown first to the right against the door and then to the left, where she fell between the dashboard and the steering wheel. In the process, her fight knee struck the inside of the automobile. On the day of the accident she was taken to her family physician, Dr. Gerald Bertinot. Dr. Bertinot testified he examined her knee and could find no lacerations, fractures or contusions that could be seen, and indicated that he could find no injuries. Camille continued to have trouble with her right knee, with the symptoms varying in degree, and on December 27, 1963, she was taken to Dr. Guy J. Dunning, an orthopedic surgeon of Lafayette.
Dr. Dunning diagnosed Camille’s condition as a contusion of the anterior outer aspect of the upper leg just below the knee joint. He prescribed local heat and decreased activity. Camille returned on February 5, 1964, stating that the right kneecap had dislodged while she was running. She complained also of the knee locking and of a lump which would appear. At that time the doctor felt she might have a loose body in the knee. Camille was told to wear a knee brace and to return in two weeks. Her troubles continued, and an operation was performed on July 6, 1964. In the operation Dr. Dunning did not find any foreign body in the joint, but found degeneration behind the cartilage in the kneecap and enlargement of the normal fat pad over the lateral side of the joint. A diagnosis of chondromalacia of the patella was made. The degenerative cartilage was removed from the patella and the pad was cut down. Camille recovered well from the operation. She was in the hospital one week, receiving injections and medications regularly. She was then confined to a bed at home and in a wheelchair for about one month, and was required to use crutches for another month. During this time, she wore a long leg cast from the ankle to the hip. She then received numerous physical therapy treatments which were painful. On October 12, 1964, therapy was discontinued, and she was allowed to resume her dancing career, which she had pursued for about ten years. Dr. Dunning continued to see Camille until he finally discharged her from treatment relative to the right knee as of May 5, 1965. It was Dr. Dunning’s opinion that the problems Camille had with her right knee were caused by the accident. He testified that the roughening and deterioration under the kneecap sometimes takes several months after an injury before it is evident. Dr. Dunning later operated on Camille’s left knee for a re-occurrent dislocation, not related to the accident. There was no deterioration under the left kneecap.
*383 Dr. William L. Meuleman, an orthopedic surgeon of Lafayette, Louisiana, examined Camille on October 19, 1964, at the request of defendant. This examination was after the operation of the right knee. He found the operation to have been successful and the knee essentially normal. Considering the history which he had about the injury, Dr. Meuleman felt that Camille’s complaints and the surgery that was required related to a subluxing patella, apd .that the condition would not have likely been caused or aggravated by the injury to the knee received in the accident.
Camille was also examined by Dr. Daniel E. Schechter of the Department of Orthopedic Surgery at Ochsner Clinic, on September 29, 1966, because of bilateral knee problems. He found some problems with the right knee, which had recently subluxed, noting it had a deficient lateral condylar ridge. There was crepitus of the right knee on movement. He diagnosed Camille’s condition as early chondromalacia of the right patella and felt another operation would possibly be needed in the future.
Camille had engaged in dancing activities for about ten years, including acrobat, toe, ballet and jazz. She had also played basketball. She testified she considered teaching dancing. These activities were interrupted by the accident and injury to her right knee. She has returned to dancing, but is unable to do acrobatics or play basketball. The lay evidence shows she had some trouble with her left kneecap displacing prior to the accident, but she had not had any trouble with her right knee until after the accident.
The first issue we shall consider is whether or not the district court erred in finding a causal relation between the accident and the troubles Camille had with her right knee. Counsel for defendant argues that Camille’s troubles with her right knee, as well as her left knee, were caused by inherited defects and not from any inconsequential injury she may have received in the automobile accident. It is argued that the evidence shows Camille had problems with her kneecaps dislocating upon certain activities, such as acrobatics, which was the likely cause of the operation of the right knee.
After having carefully considered the record in this case, we find the district court properly accepted the opinions of the specialist who treated Camille and performed the operation. His opinions are supported by the lay evidence that Camille had no trouble with her right kneecap displacing until after the accident. Also, Dr. Dunning operated on both knees. The operation on the left knee was required because of the subluxing patella only. He found no deterioration under the left kneecap as was found under the right kneecap. These findings tend to support his opinion that the accident caused the problems in Camille’s right knee. Dr. Dunning was in the best position, from his treatments, to determine the basis of Camille’s injuries, and we find no error in the district court’s acceptance of his opinions over those of Dr. Meuleman.
We shall next consider whether there was any abuse of the discretion of the district court in granting the awards for personal injuries of $6,500.00 for Camille, and $1,-500.00 for Mrs. Olivier.
Camille suffered very little pain at the outset, but her difficulties increased as the injury progressed. She was subjected to a serious operation, requiring a week’s stay in the hospital, and a recuperative period in bed at home, in a wheelchair at school, and on crutches, wearing an uncomfortable cast from her hip to her ankle for about two and one-half months. She then underwent numerous physical therapy treatments which were painful. Three years after the operation she still had difficulty with her knee and is faced with the possibility of another operation. Her injuries have affected to a degree a possible dancing career which she had pursued since early childhood. The operation left a large and unsightly scar around the left side of her right kneecap.
Considering her injuries as compared with those in other cases cited in *384 briefs, we do not find that the district court abused its discretion, and accordingly, hold that the award for Camille of $6,500.00 was neither inadequate nor excessive.
Mrs. Olivier received injuries to her back, elbow and right foot in the accident. She saw Dr. Bertinot on the day of the accident, who gave her medication to relax muscles and reduce pain. Dr. Bertinot treated her regularly until he discharged her on October 8, 1963. He acknowledged that he had seen her frequently since then on social visits and otherwise, and that she still had complaints up until the time of trial. In the summer of 1965, Dr. Bertinot was asked whether treatments at Hot Springs, Arkansas, would be beneficial to Mrs. Olivier and Camille, and he agreed to them, indicating that he would prescribe such treatments if they wanted them. He did not know how much the hot baths would benefit their conditions and testified that similar treatments could have been obtained in Lafayette.
Dr. Dunning first examined Mrs. Olivier on April 29, 1964. He made a diagnosis of fibrosis of the midline back, and gave heat treatment in the office. He later recommended a course of physical therapy which was continued until June 19, 1964. On October 25, 1964, she was still having difficulty, and he returned her to more physical therapy treatments. Dr. Dunning saw Mrs. Olivier approximately ten times between April 29, 1964, and November 12, 1964, when he discharged her from treatment. His final diagnosis was fibrosis of the mid-dorsal area, which is a scarring of the tissues. Such a condition causes discomfort with use and also with changes of the weather. He did not find Mrs. Olivier to have any arthritic changes. He believed her condition to be a residual condition which resulted from a strain or contusion that she received in the accident. During his examinations, he found no evidence of muscle spasm or restriction of motion. He agreed that her complaints were of subjective discomfort and were light complaints.
Dr. Meuleman examined Mrs. Olivier on October 19, 1964. At that time Mrs. Olivier’s complaints were directed to the area of the cervical spine, but Dr. Meuleman could find no evident disability.
Mrs. Olivier was examined by Dr. Gordon B. McFarland, Jr., of the Department of Orthopedic Surgery at Ochsner Clinic, on October 17, 1966. X-rays were negative. Dr. McFarland found she had a chronic cervical strain resulting from a hyperextension injury which had responded well to conservative treatments. He prescribed medication.
Mrs. Olivier testified she had not had any difficulty with her back prior to the accident, but that since then she has continuously had trouble and has had to use a heating pad and take medications for relief. In all, she has taken 36 physical therapy treatments. She only suffered with her arm and the instep of her right foot for about two months.
In making an award of $1,500.00 to Mrs. Olivier, the district court believed her complaints were of a mild nature, and that she had substantially recovered from the results of the accident by November 12, 1964. Although this Court finds that the amount of the award granted to Mrs. Olivier is on the low side of the range of cases involving similar injuries, we do not find the district court abused its wide discretion; and, accordingly, hold that the award of $1,-500.00 is not inadequate.
The final issue is whether the district court erred in refusing to allow the medical expenses of $355.68 which were incurred after November 12, 1965. Considering the medical evidence in this case, we find no manifest error in the finding by the district court that these medical expenses were not adequately substantiated as necessary for the treatment of any injuries received by Mrs. Olivier or by Camille in the accident of July 12, 1963. The majority of these expenses related to the trip to Hot Springs in the summer of 1965. This was *385 after Camille’s operation on her knee and after Mrs. Olivier had been discharged from treatment. If needed, similar treatments could have been prescribed and performed in Lafayette. No such treatments were actually prescribed, although Dr. Bertinot, when asked, informally acknowledged that the treatments might be beneficial. The district court properly disallowed these expenses.
For the reasons assigned, the judgment of the district court is affirmed. All costs of appeal are assessed against appellant.
Affirmed.